UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:06CV-189-H

MARY L. HALL and EUGENE HALL                                            PLAINTIFFS

V.

SPENCER COUNTY, KENTUCKY, et al.                                       DEFENDANTS

**MEMORANDUM OPINION**

Defendants Russell and Marlene Cranmer (collectively "the Cranmers"), Spencer County, Kentucky (the "County"), Taylorsville, Kentucky (the "City"), (collectively "Defendants"), have moved for summary judgment against Mary Lou and Eugene Hall (collectively "Plaintiffs") on the question of whether Plaintiffs' claims are barred by the applicable statute of limitations. Additionally, Defendants have filed several other motions.[1] The Court will deal with the initial statute of limitations issue as to all claims first. The Court finds that the statute of limitations bars Plaintiffs' constitutional claims.

**I.**

Plaintiffs operated a wrecking-tow service and storage lot in Spencer County, Kentucky that responded to dispatched 911 towing calls. Years ago, the County agreed to assume the

---

[1] Defendants moved to dismiss for failure to allege damages, their computations and bases. Defendants also moved for summary judgment claiming that (1) the Plaintiffs did not engage in constitutionally protected speech, (2) Defendants are not liable because the actions were not done by a state actor, (3) Plaintiffs were not deprived of any protected property interest, (4) any act taken was not taken pursuant to municipal policy, (5) the County is released from liability because Plaintiffs had no contractual relationship with the County, (6) the City is released from liability because it had no contractual relationship with Plaintiffs or Cranmer, and (7) Defendants' actions did not amount to "arbitrary power" within the meaning of the Kentucky Constitution.

responsibility of dispatching all local 911 calls on behalf of the City. In 1994, the County contracted with the Cranmers to run the 911 dispatch service for both the County and the City. The County and the Cranmers renegotiated the contract in 1998. In 2005, the County solicited bids for the dispatch service and once again awarded the contract to the Cranmers effective July 1, 2005.

When the Cranmers began operating the dispatch service, Plaintiffs were the only towing company in the county. By 2004 two additional towing companies were operating in the County and receiving calls from the Cranmers. Plaintiffs believe that beginning in early 2005 they started receiving fewer dispatch calls. No one disputes that by March 30, 2006 Plaintiffs were receiving no dispatch calls. In fact, their last call was March 12, 2006. Plaintiffs retired from the wrecking business in October 2006.

During 2004 and 2005 Plaintiffs complained repeatedly and publicly about the operation of the dispatch service. Mary Lou Hall registered complaints with the mayor, ethics committee, fiscal court, state offices and state auditor. On March 17, 2006, Plaintiffs eventually filed a lawsuit against Defendants, alleging that the bidding process had proceeded improperly and the dispatch contract had been improperly awarded to the Cranmers. The Complaint also alleged that no rotational protocol for dispatching existed, in violation of Plaintiffs' rights.

Subsequently, on September 24, 2007, after some initial discovery, Plaintiffs filed an amended complaint. Plaintiffs allege that through discovery they had determined that the Cranmers had stopped giving calls to Plaintiffs due to the pending litigation. The amended complaint abandoned all former claims and asserted new retaliation claims. These claims divide into two categories: (1) claims for retaliation by Defendant in response to statements made

before Plaintiffs filed the original lawsuit ("Pre-Filing Claims") and (2) claims for retaliation as a result of Plaintiff filing the first Complaint ("Post-Filing Claims").  The amended complaint alleges new constitutional claims brought under § 1983, alleging that Defendants had decreased the number of calls Plaintiffs received in retaliation against Plaintiffs criticisms from 2004 to 2005.  Plaintiffs also allege that Defendants stopped giving Plaintiffs any calls in retaliation against Plaintiffs filing this lawsuit.  Defendants now move for summary judgment on the grounds that the relevant statute of limitations bars Plaintiffs' remaining claims.

## II.

For claims under § 1983, the Court applies the statute of limitations for personal-injury tort actions in the state where the cause of action originated.  *Owens v. Okure*, 488 U.S. 235, 249-250 (1989).  Under Kentucky law, claims for personal-injury must be filed within a year.  *Collard v. Kentucky Bd. of Nursing*, 896 F.2d 179 (6th Cir. 1990); *See also Milliaon v. Raymer*, 139 S.W.3d 914, 919 (Ky. 2004).

The cause of action accrues on the date of the injury to the person even though the extent of the injury is not known until later.  *Caudill v. Arnett*, 481 S.W.2d 668, 669 (Ky. 1972).  Thus, it accrues once "the cause or the foundation of the right [comes] into existence."  *Id.* (quoting *Jordan v. Howard*, 54 S.W.2d 613 (1932)).  This requires the plaintiff have knowledge of sufficient facts to state a cause of action.  *See Hazel v. General Motors Corp.*, 863 F. Supp. 435, 438 (W.D. Ky. 1994).  One need not have discovered that a cause of action exists.  *Id.*  The plaintiff must only know that an injury exists, as well as a possibility it was caused by some actionable means.  *See id.*  *Hazel* also concluded that fraudulent concealment of the cause of

-3-

action will toll the statute of limitations. Here, no evidence suggests that Defendant concealed any evidence of liability from Plaintiffs. Thus, the cause of action accrued when Plaintiffs had knowledge of his injury and had reason to suspect their cause of action.

Plaintiffs filed the original complaint on March 17, 2006 and filed their amended complaint September 24, 2007. Any Pre-Filing retaliation claims would necessarily have arisen before that date. More than one year passed until the filing of the amended complaint. Thus, the statute bars those claims. Plaintiff also suggests that some certain Post-Filing retaliation claims arose after the original complaint. The Cranmers say that they sent their last dispatch to Plaintiffs on March 12, 2006. Plaintiffs say that they were no longer receiving calls after March 30, 2006. Consequently, by March 30, 2006, Plaintiffs had filed their lawsuit and soon afterwards were no longer receiving referral calls. These two facts were sufficient to place them on notice of their potential claim. Plaintiffs then waited eighteen (18) months to file their amended complaint. Thus, the Post-Filing Claims are barred unless they relate back to the original complaint.

## III.

Fed. R. Civ. P. 15(c)(1)(B) provides that the amended complaint may relate back to the date of the original complaint when "amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading ..." The policy supporting amendment of pleadings eschews allowing parties the protection of the statute of limitations once litigation has begun involving the same conduct, transactions, or occurrences. *Miller v. American Heavy Lift Shipping*, 231 F.3d 242, 248 (6th Cir. 2000)(quoting *Brown v. Shaner*, 172 F.3d 927, 932 (6th Cir. 1999)). The relation back doctrine furthers the

"fundamental tenor of the Rules," which encourages liberality and trial on the merits rather than technicalities. *Miller*, 231 F.3d at 248, *Bledsoe v. Community Health Systems, Inc.*, 501 F.3d 493, 516 (6th Cir. 2008).

The Rule, however, does not define the scope of "conduct, transaction, or occurrence." *Bledsoe*, 501 F.3d at 516. The Sixth Circuit asks "whether the party asserting the statute of limitations defense had been placed on notice that he could be called to answer for the allegations in the amended pleading." *Id.* The Supreme Court has expressed the rationale behind this perspective as ensuring that proper notice is given, analogizing to the pleading requirement for "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 150 n.3 (1984). In *Baldwin*, the Supreme Court noted that a pleading that did not contain such notice could not be rehabilitated by invoking Rule 15(c). *Id.* Although this reasoning allows amendments that state an entirely new claim for relief or allege additional causal facts to relate back, any amendment must meet the Rule 15(c) test. *Miller*, 231 F.3d at 248).

In *Miller*, the plaintiff filed amended complaints in wrongful death actions for deceased seamen. *Id.* at 246. The amended complaints asserted liability under the Jones Act and general maritime law resulting from exposure to benzene. *Id.* The plaintiff's original complaint had not specifically pleaded either leukemia or benzene exposure, referring only to illness from exposure to hazardous substances. *Id.* The Sixth Circuit concluded that the amended complaints simply pled the original claims with more specificity. *Id.* at 249. The Sixth Circuit did acknowledge in its analysis, however, "that a claim with entirely different 'operative facts' will not relate back." *Id.*

The Sixth Circuit addressed this further in *Moross Limited Partnership v. Fleckenstein Capital, Inc.*, holding that where the amended complaint alleges completely different conduct from the conduct underlying the original claim, the amendment will not relate back. 466 F.3d 508, 518 (6th Cir. 2006). In *Moross*, the plaintiff's original complaint alleged misrepresentation and omissions in the defendant's offering materials. *Id.* at 511, 518. The amended complaint asserted a claim for "cherry picking," whereby the fund manager was purposefully allocating profitable trades to a fund other than the plaintiff's. *Id.* The Sixth Circuit held that the new claim did "not constitute 'added events leading up to the same injury' or 'an added theory of liability for the same occurrence.'" *Id.* at 518. The new claims, instead, "involve[d] a completely different set of factual disputes from the circumstances regarding the cherry-picking claim." *Id.* Therefore, the amended complaint did not relate back. *Id.* at 518-19.

On the other hand, in *Tiller v. Atlantic Coast Line R. Co.*, the Supreme Court held that the wife of a railroad employee killed on the job could amend her original complaint for negligent operation of a railroad car to include a claim under the Federal Boiler Inspection Act. *Id.* at 251 (citing *Tiller v. Atlantic Coast Line R. Co.*, 323 U.S. 574 (1945)). The Supreme Court concluded that the "defendant had notice from the beginning that plaintiff was trying to enforce a claim against it because of the events leading up to the death of the deceased in the defendant's yard." *Id.* (citing *Tiller*, 323 U.S. at 581) (internal quotations omitted). Thus, where "an identity between the amendment and the original complaint with regard to the general wrong suffered and with regard to the general conduct causing such wrong" exists, the amendment will relate back. *Id.* (quoting *Benco Plastics, Inc. v. Westinghouse Elec. Corp.* 387 F. Supp. 772, 783 (E.D. Tenn. 1974)).

The Sixth Circuit will look to extrinsic evidence when making the assessment of whether the defendant had sufficient notice of the plaintiff's claims. *Miller*, 501 F.3d at 516-17. Thus, the Court may ask whether the allegations in the original complaint, when construed in light of other evidence, allow it to conclude that the plaintiff's new claim is "part of the same conduct, transaction or occurrence attempted to be set forth" in the original pleadings. *Id.* at 518 (citing *Employees Committed for Justice v. Eastman Kodak Co.*, 407 F. Supp. 2d 423, 440 (W.D.N.Y. 2005)). The Sixth Circuit did not specify what extrinsic evidence is permissible.

From all of these cases and the accompanying analysis, it is clear that relation back determinations require a fact intensive comparison between the original complaint and the amendment. To relate back, the Court must determine that the original complaint provides either sufficient facts or statements of the cause of action to put Defendant on notice of potential claims. Here, neither the original complaint, nor extrinsic evidence sufficiently put Defendant on notice of any retaliation claims at the time of the original complaint. The amended complaint does assert a retaliation claim, which turns on an entirely new set of facts from those alleged in the original complaint. Plaintiffs' amended complaint sets forth both a new cause of action and a new set of facts supporting that cause of action. These claims bear no resemblance to the original complaint's claims of an improper bidding process and lack of County policy for the operating procedures of the dispatch service. Further, the original complaint does not allege facts indicating that Defendant was giving Plaintiffs fewer dispatches or that such an action would be the result of any retaliation. Plaintiffs make only generic statements that Defendants' actions violate Plaintiffs' rights. Thus, the Court finds no basis upon which it might conclude that the retaliation claims relate back to the original complaint under Fed. R. Civ. P. 15(c)(1)(B).

Plaintiffs argue that Defendants were on notice of the retaliation claims before the amended complaint was filed because of Mary Lou Hall's deposition statements in May 2007. Such a notice neither initiates nor tolls the running of the statute. However, the only type of notice that can relate back would be factual assertions in the original complaint itself. Plaintiffs' § 1983 claims in the amended complaint are barred by the one-year statute of limitations and they do not relate back to the original complaint. Plaintiffs first, second, and third causes of action are dismissed with prejudice.

**IV.**

Plaintiffs only remaining claims, the fourth, fifth, sixth, and seventh causes of action, arise under the Kentucky State Constitution. Those claims assert deprivation of rights under sections 1 and 2 of the Kentucky Constitution. Lacking diversity of citizenship or any federal constitutional claim, the Court is without federal jurisdiction under such circumstances, the Court remands those claims to state court for further proceedings.

The Court will enter an order consistent with this Memorandum Opinion.

cc:  Counsel of Record